285 N.E.2d 676 (1972)
James HART, Appellant,
v.
STATE of Indiana, Appellee.
No. 272A69.
Court of Appeals of Indiana, First District.
August 1, 1972.
Rehearing Denied August 30, 1972.
*677 Joseph B. Barker, Kagan & Barker, Martinsville, for appellant.
Theo. L. Sendak, Atty. Gen., Mark Peden, Deputy Atty. Gen., for appellee.
LYBROOK, Judge.
Defendant-appellant (Hart) was convicted of Entering to Commit a Felony and *678 Theft after a jury trial. He was sentenced to not less than one nor more than ten years on each charge, to be served concurrently.
Hart's Motion to Correct Errors was overruled and he appeals. Issues raised are: (1) Failure of the State to grant a Speedy Trial; (2) Verdict not supported by sufficient evidence; (3) Failure to grant defendant's Motion for Directed Verdict and the giving of two of State's instructions and (4) Failure to grant a mistrial after an allegedly prejudicial statement by a police officer while on the stand.
The evidence shows that on April 7, 1969, between 7:30 A.M. and 12:00 noon, the Russell Lightle residence in the Mooresville area was burglarized and certain property taken.
On April 10, 1969, an affidavit was filed in and a warrant issued from the Morgan Superior Court for Hart. He was not immediately located and it later developed that he was incarcerated in a Florida prison from January 1970, to April 1971. On February 16, 1970, a detainer warrant was filed with Florida authorities. Defendant contends that on or about March 16, 1970 he engaged a "jail house lawyer" at the Florida State Prison who prepared a "Motion for Fair and Speedy Trial" which was mailed to the Circuit Court of Morgan County with a copy to the Prosecuting Attorney of said county. There is no evidence in the record that the Motion ever reached or was ever actually filed in the Morgan Superior Court where the case was pending, nor did it even come to the attention of that court until May, 1971.
On April 16, 1971, Hart refused to waive extradition but on May 6, 1971 consented thereto and was returned to Morgan County by the Sheriff for trial.
Hart was arraigned on May 15, 1971 and upon his request a Pauper Attorney was appointed to represent him. Cause was set for trial on May 20, 1971 and on this date defendant appeared by counsel and asked for a continuance and the case was reassigned for trial, by jury, on July 15, 1971.
On June 7, 1971, defendant filed a Motion to Dismiss and for Discharge from Custody under Criminal Rule 4, Indiana Rules of Procedure, taking the position that the State made no effort to bring the defendant to trial until May of 1971, which was over one (1) year after defendant's above Motion for Speedy Trial. At a hearing on the motion, evidence was heard which adduced the following additional facts.
Hart testified that immediately after the date of the offense herein, he went to Colorado and then to California, where he was arrested. While in custody there he was advised that there was a warrant for him in Indiana. He was also wanted by the State of Florida for "Unlawful Flight to Avoid Confinement", having received a three year sentence in 1968 for Breaking and Entering. He had approximately 14 months left to serve on this sentence when he was returned to Florida State Prison. Hart further testified that "California and the U.S. Attorney's Office and everyone else involved dropped all charges if I would go back to Florida." Hart indicated that the specific reason Florida wanted him again was because he had breached his status as a "trustee". [sic]
At the hearing on the Motion to Discharge, Richard Bray, Prosecuting Attorney, testified that he could not remember receiving a copy of defendant's Motion for Speedy Trial during the term of his office, which expired December 31, 1970. He seemed to recall something about the defendant being incarcerated in Florida and believes that at one time they started preparation of extradition proceedings but does not recall the source of his information or how far the proceedings progressed. Bray's file was turned over to his successor, James E. Harris, who first became aware of the motion in March or April of 1971, finding a copy of it in the file.
*679 There is nothing in the record to show what happened to the original Motion for Speedy Trial addressed to the Morgan Circuit Court.
Defendant's Motion for Discharge was overruled, he was tried, found guilty and sentenced.
With the above essential facts in mind, we now proceed to the consideration of defendant's first issue, i.e., the alleged failure of the State to grant a speedy trial and the ensuing 14 month delay. Defendant relies on Criminal Rule 4, the Sixth Amendment of the Constitution of the United States and Article 1, Sec. 12 of the Indiana Constitution, as well as several recent decisions of the United States Supreme Court.
After the case at bar was fully briefed, the United States Supreme Court handed down Barker v. Wingo, ___ U.S. ___, 92 S.Ct. 2182, 33 L.Ed.2d 101, (decided June 22, 1972), and in a lengthy opinion considered the speedy trial problem in some detail.
Justice Powell reviewed many of the court's prior decisions, including the recent cases relied upon by Hart. The first was United States v. Ewell (1966), 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627, wherein the defendant contended that the passage of 19 months demonstrated a violation of the Sixth Amendment guarantee of a speedy trial. The court disagreed and stressed the fact that defendant's claim of prejudice was insubstantial, speculative and premature, where it appeared that no specific evidence had been lost nor any witnesses had disappeared.
Smith v. Hooey (1969), 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607, involved a federal prisoner who made repeated demands by letters and motions for a speedy trial on a charge pending in the State of Texas. There was a delay of six years, during which the State made no effort to bring him to trial. The court held that Texas "... had a constitutional duty to make a diligent, good-faith effort . ." to bring him before the court for trial.
Justice Powell also mentioned Dickey v. Florida (1970), 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26. Here the court unhesitatingly ruled in defendant's favor in a case where defendant attempted unsuccessfully by repeated and diligent efforts by motions in the State Court, over a period of almost eight years, to secure a prompt trial. The court stressed the fact that during the interval two witnesses had died, another was unavailable and police records of possible relevance had been lost or destroyed.
In Barker v. Wingo, supra, the Commonwealth of Kentucky delayed Barker's trial in order to try a co-defendant first and the Commonwealth sought and obtained 16 continuances over a five year period. The Sixth Circuit Court of Appeals held that Barker waived the delay caused by the first series of continuances by not objecting thereto and noted that the remaining period after he first raised his claim  approximately 20 months  was not unduly long. In a unanimous opinion the Supreme Court affirmed the case and stated they were compelled to make an attempt to set forth the criteria by which the speedy trial right is to be judged. The court noted that "... unlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself." The court further noted that the severe remedy of dismissal was indeed a serious consequence, because it means that a defendant who may be guilty of a serious crime may go free, without having been tried. The court rejected the inflexible approach involving a fixed time period because it went further than the Constitution requires. Instead it adopted a "balancing test", in which the conduct of both the prosecution and the defendant are weighed.
Stating that these cases are to be approached on an "ad hoc" basis, the court *680 identified four factors to be used in the balancing test: Length of delay, the reason for the delay, the defendant's assertion of his right and prejudice to the defendant. Justice Powell held that the most serious consideration was the effect on the ability of the defendant to prepare his defense.
Applying the above factors to the case at bar, the delay of 14 months, even if it could be charged to the State, is not per se a violation of the Constitution under the cases. In asserting his right it could also be successfully contended that Hart did not correctly put the trial court on notice when he addressed his Motion for Speedy Trial to the wrong court. As to the fourth factor, that of prejudice to the defendant, none has been shown. In his brief, Hart makes several vague general assertions that the delay allowed evidence to become lost and that for this reason defendant refused to take the stand on his own behalf. However, the record does not disclose any evidence whatsoever which was lost or affected by the delay.
We conclude that the delay herein was not unreasonable under the above authorities and that Hart's Constitutional rights were not violated.
Hart further contends that Criminal Rule 4, which superseded I.C. 1971, XX-X-XX-X; Ind. Ann. Stat. § 9-1402 (Burns 1956), should be construed to apply literally to prisoners incarcerated in other jurisdictions as well as to those detained in jail without trial. Criminal Rule 4 provides in part as follows:
"(A) Defendant in jail. No defendant shall be detained in jail on a charge, without a trial, for a continuous period embracing more than six [6] months..."
Before this rule was promulgated, earlier Indiana cases decided under Burns § 9-1402 drew the distinction between being detained in jail or being detained in prison. See, Finton v. State (1963), 244 Ind. 396, 193 N.E.2d 134, wherein the court said:
"Without deciding the merits of appellant's petition for discharge in other respects, it appears that the facts do not come within the provisions of Burns' § 9-1402, supra, as the words `detained in jail without a trial' used in the statute have heretofore been construed by this Court not to be synonymous with confinement in a penitentiary for another crime. Chelf v. State (1944), 223 Ind. 70, 58 N.E.2d 353 (overruled on other grounds); See also: Palmer v. State (1926), 198 Ind. 73, 152 N.E. 607." (Our Emphasis.)
We also quote from Bewley v. State (1965), 247 Ind. 652, 220 N.E.2d 612, where the court said:
"Appellant Dulworth's sole argument on appeal is that he did not have a speedy trial under the Constitution within the meaning of the two-term statute. Acts 1905, ch. 169, § 219, p. 632, as amended in Acts of 1927, ch. 132, § 12, p. 418, being Burns' Ind. Stat. Anno. § 9-1402 (1956 Repl.).
It appears that this argument is based upon a factual contention that although he was not in `jail' for two terms awaiting trial, he was in the state reformatory serving another sentence. This is not a legally sustainable contention by the appellant."
Since both the statute and the rule contain the identical phrase "detained in jail", this line of cases supports the proposition that the distinction between jail and prison is as valid under the rule as it was under the statute.
It was formerly the law that a defendant need not be brought to trial while incarcerated in this State or elsewhere on a prior conviction, in order to preserve his right to a speedy trial. However, after Smith v. Hooey, supra, was handed down the Indiana Supreme Court in Smeltzer v. State (1970), Ind., 258 N.E.2d 647, held that this long standing rule of law had been invalidated and that in accordance with Smith v. Hooey, supra, the case turned upon *681 whether or not the authorities made a diligent, good faith effort to bring petitioner to trial in this State. In Smeltzer the defendant demanded a speedy trial and the Indiana authorities made a diligent, good faith effort to obtain the defendant from the State of Utah and their request was refused.
In summary, as stated by the United States Supreme Court, each of these cases should be judged according to their own surrounding facts. Smith v. Hooey, supra, imposed upon the State the necessity of a good faith effort once the defendant has properly asserted his request for speedy trial.
Hart's effort, however sincere and well intended, fell short of the mark in getting his motion filed in the Morgan Superior Court. Moreover, he completely failed to show any specific manner in which he had been prejudiced as required by Barker v. Wingo, supra, and other cases. We therefore conclude that his rights to a speedy trial have not been violated.
In determining whether the evidence is sufficient under appellant's second claim of error, we are not permitted to weigh the evidence but will look only to the evidence most favorable to the State. As was said in Buise v. State (1972), Ind., 281 N.E.2d 93:
"This court has repeatedly stated that when considering questions of sufficiency of the evidence, it will adhere to the following rule: This Court will not weigh the evidence nor resolve the questions of credibility, but will look to the evidence most favorable to the State and the reasonable inferences therefrom which support the verdict of the trial court or jury. Washington v. State (1971), Ind., 271 N.E.2d 888; Davis v. State (1971), Ind., 271 N.E.2d 893; Grimm v. State (1970), Ind., 258 N.E.2d 407; Sharp v. State (1970), Ind., 260 N.E.2d 593; Smith v. State (1970), Ind., 260 N.E.2d 558; and Langley v. State (1968), 250 Ind. 29, 232 N.E.2d 611. A conviction must be affirmed, if having applied the rule, there is evidence of probative value from which the trier of the facts could reasonably infer that the appellant was guilty beyond a reasonable doubt. Gann v. State (1971), Ind., 269 N.E.2d 381; Asher v. State (1969), 253 Ind. 25, 244 N.E.2d 89."
The evidence showed that the Lightle residence had been burglarized on April 7, 1969, between 7:30 A.M. when Mr. Lightle left for work and noon when he returned. The evidence showed that a television set, a radio, a 410 shotgun, a set of silverware and an electric razor were taken. Later that day, Hart was seen by his niece at her home near Martinsville shortly after noon. In his car, she observed a television set, shotgun and silverware, which looked "similar" to the stolen items, identified as State's Exhibits 1, 2 and 3 at the trial. She further testified that Hart tried to sell the television set to her family.
A routine check by Officer Chestnut, Indianapolis policeman assigned to the pawn shop detail, revealed that Hart pawned the silverware set on the same date and received $20.00. Hart pawned the television set the next day for $25.00. Officer Chestnut picked up the pawn shop cards on April 9, 1969. Hart had signed and left his thumb print on each card. Another officer testified that the prints were those of the defendant.
Regarding the theft conviction, it is well established that unexplained, exclusive possession of recently stolen goods will support a theft conviction. Cotton v. State (1965), 247 Ind. 56, 211 N.E.2d 158, 212 N.E.2d 159, Bruck v. State (1963), 244 Ind. 466, 193 N.E.2d 491, and Bradley v. State (1963), 244 Ind. 630, 195 N.E.2d 347.
It has also long been the law in Indiana, that recent possession of stolen goods, coupled with evidence that the goods were stolen during a recent burglary will support an inference of guilt. Starks v. State (1926), 197 Ind. 468, 151 N.E. 332.
*682 We conclude that appellant's contention that the evidence is insufficient is not well taken. For the same reasons Hart's Motion for Directed Verdict was properly overruled as the State made a prima facie case.
Appellant's next contention is that two erroneous instructions were given to the jury. Appellant waived this alleged error by failing to object at the trial as required by TR 51 (C), Indiana Rules of Procedure, IC 1971, 34-5-1-1:
"At the close of the evidence and before argument each party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury. The court shall note all instructions given, refused or tendered, and all written objections submitted thereto, shall be filed in open court and become a part of the record. Objections made orally shall be taken by the reporter and thereby shall become a part of the record." (Our Emphasis.)
Hart further waived this alleged error on appeal by failing to set out any objections to the instructions, verbatim in his brief, as required by Appellate Rule 8.3, which provides in part:
"When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto. Any error alleged in the motion to correct errors not treated as herein directed shall be deemed waived."
See, Lynn v. State (1971), Ind., 266 N.E.2d 8, and Callahan v. State (1964), 246 Ind. 65, 201 N.E.2d 338.
Appellant's final contention of error concerns an alleged "evidential harpoon" which occurred during the police officer's testimony:
"Q. Do you know what name or names the known [fingerprint] sample in your files was filed under?
A. Yes, this is on the arrest slip of Malicious trepass [sic]
BY MR. SAMUEL KAGAN:
Your Honor, may we approach the bench?
BY THE COURT:
Yes sir. Jury excused.
BY MR. JOSEPH BARKER:
Out of the presence of the jury I a  want to make the  at this time I would like to move the court for a mistrial in this case  this is an expert witness that has been on the police force for 17 years and he knows very well that you are not to mention any other case  criminal case in the prosecution of this case  and I can't call it an accident  I think that he knows very well that this is not proper  the jury very clearly heard it and it is prejudicial to our client to show this malicious trespass charge  and I don't know where he get [sic] this information and I think it is very proper and legal for the jury to be excused and a mistrial granted herein.
BY THE COURT:
I will overrule it  I am sure he did not do it purposely  and in light of the charge which he is charged with I can't see how the defense would be prejudiced when he is charged with First Degree Burglary and Theft  when he mentions Malicious Trespass which certainly is of a minor nature in *683 reference to these felony counts; So I will overrule it.
Jury returns to Courtroom.
BY THE COURT:
The court now instructs the jury to disregard the last responsive answer made by the witness to the Prosecutor's question."
The "evidential harpoon" has been the subject of much recent discussion and the following precepts have been distilled by our Supreme Court.
In Grimes v. State (1972), Ind., 280 N.E.2d 575, the court stated:
"This Court has previously condemned what is termed `an evidentiary harpoon,' where the prosecution through its witnesses successfully places evidence before the jury which is improper, such as previous arrests and convictions of the defendant, in situations where such evidence would not be admissible. See White v. State (1971), Ind., 272 N.E.2d 312, 26 Ind.Dec. 568. However, in examining this kind of evidence the court must refer to all of the evidence in the case to determine whether or not the testimony actually was `a harpoon.'"
In Buise v. State, supra, the court held:
"Remarks, inadvertent and those made under the tensions or heat of the contest, creep in; but we must assume a jury of rational men under the instruction of the court will disregard improper remarks.
In the case of Keifer v. State (1933), 204 Ind. 454, 184 N.E. 557, the court stated that:
`... Where it appears that reasonable and prompt measures are taken by the trial court to prevent any injurious effect from such improper remarks, it will be presumed that the error has been cured, in the absence of a contrary showing.'
Therefore, without a showing to the contrary, we are unable to find reversible error in appellant's allegation."
And in Bonds v. State (1972), Ind., 280 N.E.2d 313, the court observed:
"The general rule of Indiana is that the granting of a mistrial rests largely in the sound discretion of the trial judge." [Citations omitted.]
In the case at bar, the trial court admonished the jury to disregard the reply of the witness and we must assume they did so. Testimony concerning a relatively minor offense cannot in these circumstances require a reversal as in Moore v. State (1972), Ind., 280 N.E.2d 57:
"We have stated several times that this type of evidentiary `harpoon' requires a mistrial where it is made by all the circumstances to appear that the error placed the accused in a position of grave peril to which he should not have been subjected."
While we do not approve the use of this type of testimony from a police officer, who surely knows the rules of evidence, we do not feel that under the circumstances in the case at bar a reversal is required.
For the foregoing reasons we affirm the judgment of the trial court with the exception that defendant's sentence of not less than one nor more than 10 years on the offense of Entering to Commit a Felony should be modified and reduced to not less than one nor more than five years. This is in accordance with a recent line of cases providing that Entering to Commit a Felony is a lesser included offense under the Burglary Statute. See, Landaw v. State (1972), Ind., 279 N.E.2d 230; Easton v. State (1972), Ind., 280 N.E.2d 307; Heathe v. State (1971), Ind., 274 N.E.2d 697; Hobbs v. State (1969), 253 Ind. 195, 252 N.E.2d 498.
Cause remanded to trial court with direction to enter a corrected judgment for *684 commitment nunc pro tunc for not less than one nor more than five years on Count I of the charge.
ROBERTSON, P.J., and LOWDERMILK, J., concur.