STEVEN HOLTEL *v*. STATE OF INDIANA.

[No. 572A230.  Filed December 27, 1972.]

*Stephen C. Moberly, Glass & Moberly,* of counsel, of Shelbyville, for appellant.

*Theodore L. Sendak,* Attorney General, *Frank Gleaves III,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant (Holtel) was charged by affidavit with second degree burglary and theft, convicted by jury of both counts, and sentenced to the Indiana Youth

Center for a period of two to five years on Count I and for a period of one to five years on Count II, said sentences to be served concurrently.

The issues presented here are: (1) Was there sufficient evidence to support the conviction? (2) Did the trial judge err in questioning a witness? (3) Did the trial court err in refusing to suppress evidence obtained during an unlawful search? (4) Did the trial court err in allowing a witness to testify who was not named in the State's witness list?

Concerning Holtel's first contention, this court must proceed on the basis of the well established principle that:

> "This Court will not weigh the evidence or resolve the questions of credibility, but will look to the evidence most favorable to the State and the reasonable inferences therefrom which support the verdict of the trial court or jury." [Citations omitted.] "A conviction must be affirmed, if having applied the rule, there is evidence of probative value from which the trier of the facts could reasonably infer that the appellant was guilty beyond a reasonable doubt." [Citations omitted.] *Buise* v. *State* (1972), 258 Ind. 321, 281 N.E.2d 93."

This basic principle must, however, be applied in conjunction with another standard set by the Supreme Court in *Liston* v. *State* (1969), 252 Ind. 502, 250 N.E.2d 739:

> "We recognize the rule that we may not weigh the evidence and may only review that evidence most favorable to the state to determine, on a sufficiency of the evidence question, whether we shall affirm or reverse the judgment of the trial court. Such appellate duty, of which we take cognizance, in far too many cases requires that we probe and sift the evidence. Thus, if as a result of our probing and sifting the evidence most favorable to the state, we determine that the residue of facts is so devoid of evidence of probative value and reasonable inferences adduceable therefrom, as to preclude guilt beyond a reasonable doubt, we should so declare. A failure to do so is a rejection of our duty as an appellate tribunal and tantamount to the enunciation of a rule that any evidence no matter how infinitesimal or inferences drawn therefrom, whether based on speculation or conjecture, would be suffi-

cient to establish guilt beyond a reasonable doubt. This we are not inclined to do for to assume such a judicial posture, neglecting our appellate responsibility, would reduce the appellate process to an exercise in impotent and meaningless futility. See *Manlove* v. *State* (1968), 250 Ind. 70, 232 N.E.2d 874; *Baker* v. *State* (1956), 236 Ind. 55, 138 N.E.2d 641."

In another case similar to the one at bar, the Supreme Court, in reversing a Burglary conviction, held:

"When the evidence before the jury is entirely circumstantial, as in the case before us, certain rules have been established for the jury's guidance. It is not enough that the circumstances be consistent with the hypotheses of guilt. They must be of so conclusive a character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypotheses of his innocence. It must be such that the trier of the facts may reasonably and naturally infer to a moral certainty the existence of the fact sought to be proved." [Citations omitted.]

"It is true that the above rules are for the guidance of trial courts and juries, [Citations omitted] and it is for them to weigh the evidence and determine the guilt of the accused. But there is always the question for the reviewing court of whether or not there was evidence of circumstances from which the jury under the above rules reasonably might have drawn an inference of guilt." *McAdams* v. *State* (1948), 226 Ind. 403, 81 N.E.2d 671.

In the case at bar, Holtel was convicted of second degree burglary and theft. The only evidence offered to link Holtel to these charges was the testimony of Cathy Phillips. After proof of a burglary, Miss Phillips testified that that night she arrived at her apartment at 12:15 A.M. and found Holtel, her roommate Beth Lewis and Bill Stiles in the apartment. At approximately 12:45 Miss Phillips went to take a bath, and while she was so engaged, the boys left to go out "riding around". Miss Phillips further testified that after her bath, she, together with Holtel, Stiles and Beth Lewis carried the furniture in question into the apartment. There is no other evidence linking Holtel to the burglary or theft.

This court is well aware of the oft pronounced maxims that unexplained, exclusive possession of recently stolen goods will support an inference of guilt of the theft and that if the goods were stolen in a recent burglary, it will support an inference of guilt of the burglary. *Hart* v. *State* (1972), Ind. App., 285 N.E.2d 676.

In the case at bar, there was no evidence to connect Holtel with the stolen goods other than the testimony that he helped three other people carry them up the stairs, into an apartment in which he didn't live, and one of the occupants of which has testified that she "couldn't stand him". Merely helping someone carry furniture into a residence in which he has no possessory interest, fails to show the requisite "obtaining or exerting control" for the theft statute, IC 1971, 35-17-5-3; Ind. Ann. Stat. § 10-3030 (Burns 1956), or the possession necessary for the above presumption. In *Williams* v. *State* (1969), 253 Ind. 316, 253 N.E.2d 242, the court defined control and possession, saying:

"The terms *control* and *possession* are not precisely synonymous although they do have common elements in their meanings. Webster's International Dictionary gives the legal definition of possession as 'one who has physical control of the things and holds it for himself.' All the definitions contained in recognized law dictionaries indicate that the element of custody and control is involved in the term possession. Possession of a thing means having it under one's control or under one's dominion. A person who is in possession of a chattel is one who has physical control *with the intent to exercise such control on his own behalf*. Possession involves a present, or, in case of constructive possession, a past ability to control the thing possessed plus an intent to exclude others from such control." [Citations omitted.] (Our emphasis.)

\* \* \*

"By contrast the word *control* means the power or authority to manage, superintend, restrict, regulate, direct, govern, administer, or oversee."

\* \* \*

"Our conclusion based on a meticulous examination of the meanings of these two words is this: that to prove control

over a chattel or over other property, one does not need in all cases to show conduct which amounts to possession. *Although control is a necessary element in proving possession,* the converse is not true." (Our emphasis.)

The State relies on *Hart, supra,* but in that case, the defendant pawned the stolen goods, thus clearly evidencing complete dominion and control and an intent to exercise such control on his own behalf, giving rise to the inference that unexplained, *exclusive possession* of recently stolen goods will support a finding of guilt.

In the case at bar, however, the only evidence is that Holtel helped three others carry the stolen goods up the stairs to Miss Phillips' apartment. Control is a necessary element of possession. Since no dominion or power by Holtel over the stolen goods has been shown, and since the proof does not exclude every reasonable hypothesis of innocence as required by *McAdams, supra,* there is insufficient evidence to support the appellant's convictions.

Having determined that this case must be reversed, we need not discuss the other issues raised by Holtel. However, we feel compelled to discuss two other crucial areas of criminal law raised by this appeal.

The stolen furniture was admitted into evidence over the strenuous objections of Holtel that it was seized pursuant to an invalid search warrant. There was no affidavit filed for the search warrant as required by statute. Holtel contends that the absence of the affidavit rendered the search warrant invalid and the search of the Phillips' apartment unlawful. He sought to raise his objections before the trial with a Motion to Quash and a Motion to Suppress the evidence.

The State maintained that Holtel had no standing to raise the issue because he did not have the requisite possessory interest in the searched premises. Holtel relied on a landmark case, *Jones* v. *U.S.* (1960), 362 U.S. 257, contending he had a sufficient possessory interest to give standing. We have exhaustively researched this question and are unable to find

any decision extending the *Jones* doctrine beyond a situation wherein the charge was possession *per se,* i.e., illegal possession of marijuana. In view of our decision herein, we do not rule upon the issue of standing.

In the case at bar, the trial court held a hearing at which evidence was heard regarding probable cause for the issuance of the search warrant. In a later hearing on Holtel's Motion to Suppress, the trial judge made the following comments into the record:

> "Now, I have some ideas which may or may not be right, but I want to put them on the record about this necessity of an affidavit. Quite frequently search warrants are issued in Justice of the Peace Courts. I do not believe it was the intention of the Legislature to eliminate Courts of record from taking evidence in order to determine probable cause in the issuance of a search warrant. As a matter of fact, you have a record, Mr. Moberly, of all the evidence taken in the application for the search warrant which is much more complete and much more detailed than any affidavit drawn by a Prosecuting Attorney could possibly be because it has the words from the witnesses coming from the witnesses' mouths. As such the necessity for an affidavit in a Court of record seems to me to be—not to be that which the Legislature intended by requiring an affidavit. I think what the Legislature required was some instrument of record which would be subject to scrutiny by a Court of record when that instrument was in support of a warrant issued by a Court not of record."

IC 1971, 35-1-6-2; Ind. Ann. Stat. § 9-602 (Burns Supp. 1972) leaves no doubt as to the absolute necessity for the filing of an affidavit for a search warrant, even in a court of record. It states, in part:

> "No warrant for search or arrest *shall* be issued until there is filed with the justice of the peace, judge of any city court or magistrate's court *or the judge of any court of record, an affidavit, . . .*" (Our emphasis.)

The next section, IC 1971, 35-1-6-3, Ind. Ann. Stat. § 9-603 (Burns 1956), suggests a format for the search warrant as follows:

"9-603 [2087]. Form of search warrant. — Warrant for search substantially in the following form, shall be deemed sufficient:

State of Indiana )
           ) ss:
County of ——— )

To any constable, police officer, sheriff or conservator of the peace, greeting: Whereas, there has been filed with me an affidavit of which the following is a copy: (*Here copy the affidavit.*) You are, therefore, commanded, in the name of the State of Indiana, with the necessary and proper assistance, in the daytime or in the nighttime to enter into or upon the premises described in said affidavit and there diligently search for said goods and chattels, to wit: in said affidavit described and that you bring the same, or any part thereof found on such search, forthwith before me at my office, to be disposed of according to law.

Given under my hand this ——— day of ———, 19———.

-------------------------------------

(Justice of the Peace, or
(Magistrate) or (Judge of
——— Court.)"
(Our emphasis.)

The following cases stand for the rule that a search warrant not based on an affidavit is invalid, and further that probable cause for the issuance of a search warrant must be based on the affidavit alone and *no other evidence* may be relied upon for the finding of probable cause.

1. *Ashley* v. *State* (1968), 251 Ind. 359, 241 N.E.2d 264.
2. *Bedenarzik* v. *State* (1933), 204 Ind. 517, 185 N.E. 114.
3. *Rohlfing* v. *State* (1949), 227 Ind. 619, 88 N.E.2d 148.
4. *Lampkins* v. *State* (1933), 205 Ind. 589, 187 N.E. 374.
5. *Vukadanovich* v. *State* (1933), 205 Ind. 34, 185 N.E. 641.
6. *Kranik* v. *State* (1933), 204 Ind. 661, 185 N.E. 514.
7. *Heyvert* v. *State* (1935), 207 Ind. 654, 194 N.E. 324.
8. *Barrar* v. *State* (1934), 207 Ind. 706, 193 N.E. 94.
9. *McCurry* v. *State* (1967), 249 Ind. 191, 231 N.E.2d 227.

We now proceed to a discussion of Holtel's allegation that the trial judge erred in asking the following question of State's witness, Carl Stainbrook, at the close of his testimony:

"COURT: Mr. Stainbrook, you or your wife or Mr. Headlee and his wife ever sell or give away any of these items of merchandise which are —

MR. MOBERLY: Now, Judge, I am going to object to this question on your behalf.

COURT: You are?

MR. MOBERLY: Yes.

COURT: State your objection.

MR. MOBERLY: Well, I object to the Court asking questions of the witness which have not been asked by the State of Indiana represented by the Prosecuting Attorney. The Prosecutor is charged with trying this case, and I know that he is a competent and industrious lawyer, and I'm sure that he can do so without the Court's aid. And I say this in the most great amount of respect to the Court.

COURT: All right. I am just trying to find out what happened here. Objection overruled. Do you remember the question?

A. No, I don't.

COURT: The question was did you or your wife or Mr. Headlee or Mrs. Headlee sell or give away any of these items of merchandise?

A. No, they did not.

COURT: That's all. You are excused.

WITNESS, CARL STAINBROOK, EXCUSED."

Holtel contends that since there was no evidence in the record that the exhibits had been unlawfully taken, the Trial Judge abandoned his role as an impartial referee of the trial and assumed the role of Prosecuting Attorney by asking the above question.

We need not hold that the trial judge's action in propounding this question constituted reversible error. It is true that trial judges are given some latitude in questioning witnesses,

but we feel that a question seeking to elicit a material fact necessary to the State's case would be better left to the Prosecutor.

Due to the insufficiency of the evidence, as discussed above, the judgment herein is reversed and this cause is remanded for a new trial.

Robertson, P.J. and Lowdermilk, J., concur.