JOHNNY L. GREEN *v*. STATE OF INDIANA.

[No. 2-273A27. Filed June 19, 1973.]

*Theodore Koch,* of Indianapolis, *Michael T. Dugan, II,* of counsel, of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

HOFFMAN, C.J.—Defendant-appellant Johnny L. Green was charged by affidavit with the crime of theft. Trial was to the court without the intervention of a jury. Green was found guilty of the crime of theft of property of the value of over $100 and fined in the penal sum of $1,000, committed to the custody of the Indiana Department of Corrections to be imprisoned for a period of not less than one nor more than ten years and disfranchised and rendered incapable of holding

any office of trust or profit for a period of eight years. The motion to correct errors filed by Green was overruled and this appeal followed.

On appeal, Green first contends "[t]hat the finding and decision of the Court was not sustained by the evidence in that the State failed to prove that the defendant ever had in his possession the three coats taken in the alleged theft."

Deputy Sheriff Ronald Henry testified that on December 26, 1971, he was employed at a second job "at Blocks, Lafayette Square." Deputy Sheriff Henry further testified, in pertinent part, as follows:

"Q. And, during what hours did you work on that date?
"A. I believe it was from 9:00 A.M. in the morning until 9:30 that night.
"Q. And during the course of that work day did you observe a Jonny [Johnny] L. Green?
"A. I did.
"Q. Approximately what time of the day was this?
"A. Approximately 4:00 P.M. in the afternoon.

*  *  *

"Q. And what did you observe—first observe Mr. Green doing?
"A. He was walking with another male subject to the area of the mens suits and coats.
"Q. What did you do then?
"A. I followed the subject through the coats. He went north through the jewelry counter into better dresses then over to better coats and better dresses.
"Q. And during this time as he went through these places was he alone?
"A. No he was not.
"Q. O.k. then was [what] happened?
"A. Then I seen [saw] them walk to the coat rack where better coats, it would be Department 114 with another subject and had a shopping bag that Defendant held while another subject placed three coats into this bag.
"Q. O.k., then what happened?
"A. Then the subject that was with Mr. Green took the shopping bag from Mr. Green and proceeded toward the east exit of Blocks Lafayette Square.
"Q. Now, who was holding the bag while the coats were being put in it?

"A. Jonny [Johnny] Green.

"Q. Mr. Green held the bag and put the coats in it?
"A. Yes.

"Q. O.k. after the coats were put in the bag then what happened?
"A. Then the person that was with Jonny [Johnny] Green took the shopping bag and they both walked, I would say very rapidly, through the departments toward the east exit of Lafayette Square.

"Q. Then what happened?
"A. Both exited from the east exit and this unit followed them. They passed numerous cash registers not offering to pay for them. This officer approached the person that was with Jonny [Johnny] Green and I identified myself with a badge and told them I was a police officer. Mr. Green walked to the far side of the car. The other subject put the coats in the back seat of a waiting vehicle parked at the curb in front of the exit. At that time I approached the subject with Jonny [Johnny] Green and my partner was with me and approached Mr. Green. They both broke away and fled. One went east in the parking lot, over the fence, that was Mr. Green, over the interstate and into the woods."

Also, Special Deputy Sheriff David Watson's testimony revealed the same fact.

The above testimony, together with the remainder of the evidence contained in the record before us, reasonably yield the inference that Johnny L. Green was in possession of the three coats.

Green next contends that the State failed to prove the value of the stolen coats.

IC 1971, 35-17-5-12, Ind. Ann. Stat. § 10-3039 (Burns 1972 Cum. Supp.), provides, in pertinent part, as follows:

"(4) For the purposes of subsections (1) and (3) of this section, the price which appears on the price tag or is marked upon the property itself is inferred to be the value of the property; Provided, however, That if the price has been reduced for sale and the price tag or the price marked on the property itself has not been changed, the reduced sale price shall be inferred to be the value of the property for purposes of subsections (1) and (2) hereof."

Here, State's Exhibits Nos. 1, 2 and 3 were admitted into evidence without objection. State's Exhibit No. 1 was a black ladies coat, street length, with a fur collar. State's Exhibit No. 2 was a tan suede ladies coat, street length, with a fur collar. Attached to the coat was a tag bearing the price of $139.90. State's Exhibit No. 3 was a beige 100% wool ladies coat, street length, with a fur collar. Attached to the coat was a tag bearing the price of $175. The value of the stolen items was sufficiently established. Error, if any, in permitting the Director of Security of the store to testify as to the value of the coats was thus rendered harmless.

No reversible error having been shown, the judgment of conviction appealed from is affirmed.

Affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported at 296 N.E.2d 925.