JAMES HUBBLE *v.* STATE OF INDIANA.

[No. 2-173A20. Filed September 27, 1973.]

*Richard L. Milan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

## I.

### STATEMENT ON THE APPEAL

STATON, J.—Indianapolis Police Officer David Cress was employed part-time at the G. C. Murphy Company. He was told by one of the saleswomen that a crime of theft had been committed in the store. A description of the man and the automobile that he was seen getting into was given to Officer Cress. This information was immediately telephoned into the Indianapolis Police Department Dispatcher and a police car was sent to the store. Approximately ten (10) minutes later, an automobile with a passenger answering the description given to Officer Cress was observed, stopped, and the

passenger arrested. Two adding machines with G. C. Murphy Company price tags on them were found in the rear seat. James Hubble, the passenger, was charged with possession of stolen property[1] and theft.[2] The trial court found Hubble not guilty of possession of stolen property but did find him guilty of theft. Hubble was sentenced to imprisonment for a period of one year at the Indiana State Farm with six months suspended.

Sufficiency of the evidence to sustain the conviction on the charge of theft is the only issue that will be discussed in this opinion.

We conclude in our opinion that the evidence was not sufficient to sustain the conviction for theft. We reverse.

## II.

### STATEMENT OF THE FACTS

David Cress, an Indianapolis Police Officer, was working his part-time job at the G. C. Murphy Company, 1043 Virginia Avenue, Indianapolis, Indiana on February 16, 1972. A saleswoman reported to Officer Cress that a crime had been committed by a male negro wearing a multi-colored red shirt and dark pants who had gotten into a black 1966 Chevrolet. Officer Cress called police headquarters, and a police car was sent to Murphy's. Approximately ten (10) minutes after this call, the police car picked up Officer Cress who observed a black 1966 Chevrolet traveling north on Virginia Avenue. The officers stopped the car which contained two occupants and two adding machines with G. C. Murphy price tags on them in the back seat. James Hubble was in the passenger seat, and Officer Cress testified that he was wearing a multi-colored red shirt and dark pants. The occupants of the

1. IC 1971, 35-17-5-3(1)(f); Ind. Ann. Stat. § 10-3030(1)(f) (Burns 1972 Supp.).
2. IC 1971, 35-17-5-3(1)(a); Ind. Ann. Stat. § 10-3030(1)(a) (Burns 1972 Supp.).

car were taken back to Murphy's, but the saleswoman refused to identify either James Hubble or the black Chevrolet. The assistant manager of the G. C. Murphy Company identified the adding machines as a brand sold by the store and identified the Murphy price tags. He testified that the value of the adding machines was $42.95 each.

## III.

## STATEMENT OF THE ISSUE

The only necessary issue to be discussed for the purpose of this opinion is:

Was there sufficient evidence to sustain a conviction of theft?

We conclude that there was insufficient evidence and reverse.

## IV.

## STATEMENT ON THE LAW

Theft under our statute, IC 1971, 35-17-5-3; Ind. Ann. Stat. § 10-3030 (Burns 1972 Supp.), requires that the State of Indiana prove: (1) that James Hubble obtained or exerted unauthorized control over the property of G. C. Murphy Company, and (2) with the intent to deprive the G. C. Murphy Company of the use and benefit of such property.

When this court is considering the sufficiency of the evidence, we will consider only that evidence most favorable to the State with all reasonable inferences which may be drawn therefrom. The conviction will be affirmed if, from that point of view, there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Rogers* v. *State* (1972), 154 Ind. App. 445, 290 N.E.2d 135; *Taylor* v. *State* (1972), 259 Ind.

25, 284 N.E.2d 775. We will not weigh the evidence nor resolve questions of credibility of witnesses. *Walker* v. *State* (1973), 155 Ind. App. 404, 293 N.E.2d 35; *Smith* v. *State* (1970), 254 Ind. 401, 260 N.E.2d 558.

Our function on appeal is: ". . . to insure that the State has sustained its burden of proof on the material elements of the crime charged, and that these elements are supported by substantial evidence." *Phillips* v. *State* (1973), 260 Ind. 321, 295 N.E.2d 592, 594.

The hearsay testimony of Officer Cress, which was based upon what a saleswoman at G. C. Murphy Company had told him prior to Hubble's arrest, is not evidence of Hubble's guilt. The saleswoman did not testify. Officer Cress' testimony was admitted for the sole purpose of showing *corpus delicti*, a crime had been committed by someone. It explains Officer Cress' actions and the probable cause for stopping and arresting Hubble. Here, its evidenitary significance stops.

Neither the driver or Hubble acted suspiciously before being arrested. The adding machines were not concealed. They were in the backseat and easily discovered by Officer Cress. The only statement made to Officer Cress was ". . . they just wanted to know why they were arrested, was all." There is no circumstantial evidence connecting Hubble with the initial *corpus delicti*. The only evidence of Hubble's guilt is that he was a passenger in an automobile which had two adding machines in the backseat. The State failed to establish beyond a reasonable doubt that the adding machines found in the backseat were stolen property. The assistant manager of G. C. Murphy Company testified:

"Q. Did you see those adding machines?
"A. Yes sir.
"Q. And, whose adding machines were they?
"A. G. C. Murphy Company.

"Q. And, you identified these, how did you identify them?

"A. Uh, for the brand name and for the sales tickets that was on the machines.

"Q. Now, can you tell the Court, how much these two adding machines were worth, what is the value of them?

"A. At the time, I believe the value of the adding machines was forty-two, ninety-five, a piece, if I can remember.

"Q. That would be forty-two, ninety-five a piece?

"A. Yes sir."

This testimony does not establish that these two Smith-Corona adding machines were the property of G. C. Murphy Company on the 16th day of February, 1972, and were being offered for sale in the store where the crime is alleged to have been committed. The price tag is some evidence of value. *Green* v. *State* (1973), 156 Ind. App. 446, 296 N.E.2d 925. The price tag does not establish title and location.

The State has further failed to establish the necessary element of control. *Williams, Spegal* v. *State* (1969), 253 Ind. 316, 253 N.E.2d 242;[3] *Holtel* v. *State* (1972), 155 Ind. App. 1, 290 N.E.2d 775. There is no evidence in the record from which it can be inferred that

---

3. In *Williams, Spegal* v. *State* (1969), 253 Ind. 316, 321-322, 253 N.E.2d 242, the Supreme Court of Indiana defined control and possession as follows:

"The terms *control* and *possession* are not precisely synonymous although they do have common elements in their meanings. Webster's International Dictionary gives the legal definition of possession as 'one who has physical control of the things and holds it for himself.' All the definitions contained in recognized law dictionaries indicate that the element of custody and control is involved in the term possession. *State* v. *Virdure* (Mo. 1963), 371 S.W.2d 196. Possession of a thing means having it under one control or under one's dominion. *U.S.* v. *Malfi* (3rd Cir. 1959), 264 F.2d 147. A person who is in possession of a chattel is one who has physical control with the intent to exercise such control on his own behalf, *New England Box Co.* v. *C & R Const. Co.* (1943), 313 Mass. 696, 49 N.E.2d 121, 150 A.L.R. 152. Possession involves a present or, in case of constructive possession, a past ability to control the thing possessed plus an intent to exclude others from such control. *State ex rel. Edie* v. *Shain* (1941), 348 Mo. 119, 152

Hubble had control of the two adding machines. He was a passenger in the front seat of an automobile. There is no circumstantial evidence in the record which tends to establish any vestiges of control by Hubble.

The facts in the record before us come squarely within and are controlled by *Melvin* v. *State* (1968), 249 Ind. 351, 232 N.E.2d 606; *Hopkins* v. *State* (1973), 155 Ind. App. 195, 291 N.E.2d 914; and *Holtel* v. *State, supra.* In *Melvin* v. *State, supra,* the defendant was seen standing three (3) feet from a cash register in an alley where a shoe store had one of the windows broken. In *Hopkins* v. *State, supra,* the defendant was standing in front of an automobile with a raised hood which had been parked along the highway. The battery cables had been disengaged from the terminals. In the present case, the evidence merely shows that Hubble was a passenger in the front seat of an automobile which had two adding machines in the backseat with G. C. Murphy Company price tags on them. If the evidence merely tends to establish a suspicion of guilt, it is not sufficient to sustain a conviction. *Phillips* v. *State, supra; Dunn* v. *State* (1973), 260 Ind. 142, 293 N.E.2d 32.

S.W.2d 174. For additional definitions of the word *possession* see, 72 C.J.S., p. 233; also see 'Possession' (control, care or custody), 33 Words and Phrases, p. 80; and 'Custody' (charge control or possession) 10A Words and Phrases, p. 500. "By contrast the word *control* means the power or authority to manage, superintend, restrict, regulate, direct, govern, administer or oversee. Black's Law Dictionary, Fourth Edition. It is the power or authority to manage . . . restrict. *State* v. *First Bank of Jud* (1924), 52 N.D. 231, 202 N.W. 391.

'Ordinarily control means . . . power or authority to check or restrain; regulating power; restraining or directing influence . . . *so to it may imply, or not imply possession, depending on the circumstances* . . .' 18 C.J.S., p. 28 (our emphasis)

"See also the varying definitions of 'Control' in 9A Words and Phrases, p. 4 and following.

"Our conclusion based on a meticulous examination of the meanings of these two words is this: that to prove control over a chattel or over other property, one does not need in all cases to show conduct which amounts to possession. Although control is a necessary element in proving possession, the converse is not true. Our analysis is supported by the wording of the statute [10-3040, *supra*] which states that the definition of 'exert control over property' includes *but is not limited* to possession."

The judgment of the trial court should be and the same hereby is reversed with instructions to grant James Hubble a new trial.

Hoffman, C.J., concurs in result with separation opinion, in which Sharp, J., concurs.

CONCURRING OPINION

HOFFMAN, C.J.—I concur in the result reached but believe that the State did establish that the Smith-Corona adding machines were the property of G. C. Murphy Company.

Mr. Duane R. Marr, Assistant Manager of G. C. Murphy Company, testified:

"Q. And, whose adding machines were they?

"A. G. C. Murphy Company."

This clearly established the ownership in G. C. Murphy Company. Mr. Marr's explanation of his basis for this answer merely went to the weight of the testimony, and such was for the trier of the facts.

On appeal by a defendant we can only consider the evidence most favorable to the State with all reasonable inferences which may be drawn therefrom. We may not weigh the evidence. Therefore, the ownership in G. C. Murphy Company of the adding machines was clearly established.

I concur in the other parts of the opinion and with the result reached.

Sharp, J., concurs.

NOTE.—Reported at 301 N.E.2d 396.