Gordon TURENTINE, Appellant,

v.

STATE of Indiana, Appellee.

William L. INGRAM, Appellant,

v.

STATE of Indiana, Appellee.

Nos. 2–1176A431, 2–577A176.

Court of Appeals of Indiana,
Second District.

Jan. 22, 1979.

Art R. Teirumniks, Indianapolis, for appellants.

Theodore L. Sendak, Atty. Gen., Susan J. Davis, David T. O'Malia, Deputy Attys. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Gordon Turentine and William L. Ingram appeal their convictions of Theft.[1] Though each defendant was tried separately and each has perfected his separate appeal, the operative facts arise from the same transaction and the appeals involve a common question of law. Therefore, pursuant to Ind.Rules of Procedure, Appellate Rule 5(B), we consolidate the appeals and by this decision dispose of both.

Substantially the same evidence was adduced at the trials of both appellants. Significantly, however, certain testimony was admitted at Ingram's trial which was excluded at the trial of *State v. Turentine*.

The evidence most favorable to the state reveals that Ms. Lena Hardy, upon returning from work in mid-afternoon, discovered that her apartment had been bur-

glarized. Nothing of record tends to show when the burglary occurred, except that it must have occurred sometime during the day. Soon after the crime was reported, Officer John Williamson of the Indianapolis Police Department arrived at Ms. Hardy's residence and determined that a television and stereo set had been taken. At Ingram's trial, Williamson testified without objection that shortly after his departure from the scene, he received information that three persons in a blue van were attempting to sell items similar to those stolen from Ms. Hardy's residence at a place not far from the residence. However, at Turentine's subsequent trial, this testimony was excluded by reason of defense counsel's timely objection that it was hearsay.[2] At any rate, Williamson spotted the blue van, stopped it, found Ms. Hardy's property therein and arrested the three occupants. Turentine and Ingram were passengers in the van driven by Steve Helms and owned by Helms' mother.

At their trials, both Turentine and Ingram testified that Helms had picked them up shortly before they were stopped and arrested. They were en route to "the store" when they were stopped. Each defendant disclaimed knowledge of the stolen character of the goods and Helms testified that the property was placed in his van by two other named persons who purportedly had told him that it was their aunt's property. Helms also testified that Turentine had no connection with the property and that Ingram was merely a passenger in his van.

Appellants insist that this evidence is insufficient to support their Theft convictions. Specifically, they argue that there is insufficient evidence tending to establish control or possession of the stolen property, an essential element of the offense. The State counters that the defendants' presence in the van, standing alone, sufficiently supports their convictions. The State emphasizes that the van was stopped within a

1. I.C. 35–17–5–3 (Burns Code Ed.1975)

2. Counsel for appellants upon appeal did not represent either appellant at trial. Each appel-

lant was represented at trial by the same attorney.

few blocks of the scene of the crime some thirty minutes after the crime was reported, thus permitting an inference of guilt from the purported "unexplained, exclusive possession of recently stolen property." See *Vaughn v. State*. (1971) 255 Ind. 678, 266 N.E.2d 219.

Appellants place principal reliance upon *Hubble v. State* (3d Dist. 1973) 157 Ind.App. 684, 301 N.E.2d 396. Indeed, *Hubble* is similar to the case at bar. There, the defendant was a passenger in a car which contained two stolen adding machines. The Third District reversed his conviction of Theft on the basis that there was no evidence from which it could be inferred that Hubble had knowing possession or control of the adding machines.

The State attempts to distinguish *Hubble* from the instant case by arguing that Hubble's conviction was reversed because there was no evidence that the property was stolen. However, even a superficial examination of that case reveals that only one of the three participating judges subscribed to that view. The other two judges specifically stated that the evidence sufficiently established the stolen nature of the goods. All three judges agreed that the State failed to prove the requisite possession or control.

█ Ingram's appeal presents a question which has not received a thorough appellate examination in Indiana—the extent to which hearsay evidence admitted without objection may support a conviction.

As to Ingram, Williamson's testimony regarding his receipt of information was hearsay and was admitted without objec-

tion or restrictions.[3] It was therefore available for consideration by the triers of fact with respect to the essential elements of the offense. *Pooley v. State* (1945) 116 Ind. App. 199, 62 N.E.2d 484. Similarly, this testimony is available to the reviewing court in assessing a challenge to the sufficiency of the evidence to sustain the verdict. *Mack v. State* (1956) 236 Ind. 468, 139 N.E.2d 434.

Our Supreme Court, in transposing civil case law into the criminal area, has stated it thusly:

> "'A party who permits incompetent evidence on a material issue to be introduced without objection may not be heard to say on appeal that it should not be considered in determining if the finding is supported by the evidence. Its probative value, when so admitted, is for the court or jury to determine, notwithstanding such evidence might have been excluded if proper and timely objection had been made. This rule has been applied to hearsay and secondary evidence, as well as to evidence rendered incompetent for other reasons. *Suit v. Hershman* (1918) 66 Ind.App. 388, 391, 118 N.E. 310.' [citations omitted]." *Kern v. State* (1957) 237 Ind. 144, 144 N.E.2d 705, 707.

█ Hearsay evidence is not inherently unreliable. Rather, as Professor Wigmore suggests, it is technically incompetent and therefore excludable because generally "such statements lack the trustworthiness that the test of cross-examination might supply." V *Wigmore, Evidence* § 1363 (Chadbourne Rev. 1974).[4] But where no objection to such testimony is made at trial, the trier of fact and the reviewing court

---

3. In *Hubble v. State, supra,* a police officer testified as to information received by a saleswoman regarding the description of the defendant and his vehicle. The Third District refused to consider this testimony as evidence of guilt, stating that the "testimony was admitted for the sole purpose of showing a *corpus delicti,* [that] a crime had been committed by someone." 301 N.E.2d at 398. It is unclear, however, whether that conclusion was drawn by the reviewing court or by the trial judge after proper objection by defense counsel.

4. Indeed, Professor Wigmore explains that "[t]he theory of the hearsay rule is that many possible deficiencies, suppressions, sources of error and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the test of cross-examination. . . . [T]he hearsay rule, as accepted in our law, signifies a *rule rejecting assertions, offered testimonially, which have not been in some way subjected to the test of cross-examination.*" *Id.* at § 1362 (emphasis in original).

may afford to such evidence the probative effect afforded to otherwise competent evidence of similar import. See *C.T.S. Corporation v. Schoulton,* 383 N.E.2d 293 (Ind. 1978); Annot., 79 A.L.R.2d 890 (1961). We are therefore obliged to consider *all* the evidence adduced at Ingram's trial to determine whether there is substantial evidence of probative value on each essential element of the offense. Under these circumstances, our review is limited to ascertaining whether the evidence most favorable to the state could be accepted by reasonable jurors as adequate to support the conclusion that guilt was proved beyond a reasonable doubt.

■ Williamson's testimony, albeit hearsay, provides a basis for concluding that Ingram had possession and control of the stolen property. And from the unexplained possession of the recently stolen property, a reasonable juror would be warranted in drawing an inference of guilt. *Vaughn v. State, supra.*

■ As noted, the probative value and weight to be assessed Williamson's testimony is a matter within the province of the jury. As has been so often stated, an appellate court will neither weigh the evidence nor judge the credibility of witnesses. The very nature of appellate review demands that we scrupulously avoid substituting our judgment for that of the triers of fact. Because, after a careful review of the record, we are unable to say that no reasonable juror could find guilt beyond a reasonable doubt, we hold that Ingram's conviction is supported by sufficient evidence.

■ Turentine's appeal, however, presents a different case. Williamson's hearsay testimony was excluded and thus the only evidence of Turentine's guilt is his presence in the van which contained stolen goods. The evidence does not disclose precisely when the property was taken. More importantly, no evidence was adduced that Turentine in any way exercised dominion or control or otherwise had possession of the goods or that he knew that the property was stolen. *A fortiori,* without proof of possession or control, the inference of guilt contended for by the state may not be drawn. *Holtel v. State* (1st Dist. 1972) 155 Ind.App. 1, 290 N.E.2d 775, 777. See also *Stocklin v. State* (3d Dist. 1976) Ind.App., 345 N.E.2d 863; *Corrao v. State* (3d Dist. 1972) 154 Ind.App. 525, 290 N.E.2d 484.

The evidence in the record before us would suggest that a different method of prosecutorial strategy or trial presentation might have resulted in a valid conviction. But we are not permitted to re-prosecute the state's case. Similarly, defense counsel should be made aware that the failure to object in certain circumstances may permit a different verdict than where the objection is timely made.

Accordingly, the judgment of Ingram's conviction is affirmed. The judgment of Turentine's conviction is reversed and remanded with instructions to discharge the defendant. See *Burks v. United States* (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1.

BUCHANAN, C. J., and SHIELDS, J., concur.