**Anthony W. STRODE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 2–977A368.**

Court of Appeals of Indiana, Second District.

Feb. 7, 1980.

John Muller, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Strode was tried by a jury and convicted of Theft. I.C. 35–17–5–3(1)(a) and (2)(a) (Burns Code Ed.1975). He contends that (1) his prior acquittal on similar charges should have barred the instant prosecution; (2) the trial court erred in permitting the alternate juror to retire with the jurors and sit in the jury room during deliberations; and (3) there was insufficient evidence to support his conviction. We affirm.

The evidence most favorable to the State discloses the following. Charles Fulkerson, the owner of the stolen CB radio, was at a church outing on the evening of March 26, 1977. When he arrived at the church at approximately 8:00 P.M. and parked his car, the Royce CB radio was inside. He returned to the lot that same evening, "sometime between 10:30 and 11:00 P.M.," and found the CB radio missing, along with a flashlight, his jacket, and a Bible.

The CB radio was subsequently discovered in Strode's car which was parked, approximately two miles from the church, in an area next to Shazams, an "adolescent arcade" and disco. A security officer for Shazams was on duty that night, parked next to the arcade. Shortly after midnight he observed four people in a Plymouth Fury pull in and park behind the neighboring Goodwill store. The two in front, one of whom the security officer identified as Strode, exited from the car and went around the Goodwill building towards Shazams. The other two individuals remained in the car.

The security officer, observing that the two people in the back appeared to be drinking beer, went over to investigate. He discovered Fulkerson's CB radio along with five other CB radios in the car. Four CB radios were in plain view on the floor behind the driver's seat, and two CB radios were in a bowling bag on the front floor of the passenger's side. He also found "tools and stuff" on the back floor with the four radios and an antenna on the back seat. During the 15 minute period between the time Strode and his companion left the car and the time he went over to investigate, the security officer did not observe anyone approach the car. Upon returning, Strode identified the vehicle as his and gave the security officer the trunk key.

Strode, testifying in his own behalf, stated that he was the driver but offered no explanation as to how Fulkerson's CB radio got in his car. Strode claimed that when he left the car for Shazams there were no CB radios in the car and no bowling bag. Strode also testified that the other three

occupants of his car were with him earlier in the evening; after he left his sister's home at approximately 9:30—10:00 P.M., he briefly stopped by his parents' house and then picked up the other three passengers.

## I

## DOUBLE JEOPARDY

Strode was originally charged with three separate counts of Theft. Each count alleged that "ANTHONY WAYNE STRODE, on or about the 27th day of March, A.D., 1977, . . . committed the crime of theft in that he knowingly, unlawfully, and feloniously exerted unauthorized control" over a certain CB radio. Each count specified a different radio and owner.

Pursuant to I.C. 35–3.1–1–4 (Burns Code Ed.1975), Strode filed a pretrial motion to dismiss the charges, alleging that he previously had been acquitted of three separate counts involving the same CB radios. The previous prosecution involved alleged violations of I.C. 35–18–2–1 (Burns Code Ed. 1975): Alteration or Removal of Numbers and Devices for Identification. Each information charged Strode with possession of "a manufactured item [to wit: a CB radio as specified] the serial number of said manufactured item then and there having been removed with the intent to conceal, destroy or misrepresent the identity and/or ownership of the said manufactured item . ."

Following a hearing on Strode's motion, the trial court dismissed Counts I and II. On appeal, Strode contends that his prior acquittal was also a bar to prosecution on Count III. For the reasons which follow, however, we conclude that Strode has failed to preserve the issue.

■ A double jeopardy defense may be raised in two ways. It may be raised by a motion to dismiss *prior to trial* pursuant to I.C. 35–3.1–1–4(a)(5) (Burns Code Ed.1975).[1] Or, it may be raised *at trial*. I.C. 35–3.1–1–4(b) states: "A motion to dismiss based

upon a ground specified in subdivision . . (a)(5) . . . of this section may be made or renewed at any time before or during trial."

■ A claim of former jeopardy must be presented to the trial court or else it is deemed waived for purposes of appeal. The issue may not be raised for the first time in the Motion to Correct Errors. Nor may it be raised for the first time on appeal. Ind. Rules of Procedure, Trial Rule 59(G); *Pivak v. State*, (1931) 202 Ind. 417, 175 N.E. 278.

The record of the motion to dismiss hearing discloses that the parties were in agreement over the extent to which both prosecutions involved the same factual transaction. The prosecutor and defense counsel stipulated that the stolen items specified in Counts I and II were involved in the prior prosecution, but that the CB radio specified in Count III was not involved.

Moreover, the following colloquy between defense counsel and the trial judge indicates an understanding that the motion to dismiss was not addressed to Count III; it only went to Counts I and II:

*Court*: Allright, so your Motion goes to the issue of Counts I and II?

*Mr. Muller*: Correct, Your Honor.

*Court*: Allright, show that Motion granted, and we will go to trial on Count III.

*Mr. Muller*: Very good.

*Court*: That is set for tomorrow, is it not?

*Mr. Muller*: Yes, Your Honor.

■ After the motion was sustained and Counts I and II were dismissed, Strode proceeded to trial on Count III without objection. At no time during the trial proceedings did he assert a double jeopardy defense. Strode's claim, therefore, must be deemed waived, because it was not raised either in a pretrial motion or at trial. This result obtains even though the error asserted presents a constitutional issue. *See, Jef-*

---

1. Present practice continues in effect prior law, with the motion to dismiss replacing the former special plea in bar. See, I.C. 35–4.1–2–1. The procedure for determining an issue raised by a motion to dismiss is set forth in I.C. 35–3.1–1–8.

*fers v. United States,* (1977) 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168.

## II

### ALTERNATE JUROR

■ Strode's second contention is also without merit. Our Supreme Court has held that the alternate juror, in the trial court's discretion, may be sent with the original twelve jurors to the jury room during deliberations, provided he is properly instructed not to participate in the deliberations unless needed to replace one of the original jurors. *Johnson v. State,* (1977) Ind., 369 N.E.2d 623. Since the necessary instruction was given in this case,[2] we find no error.

## III

### SUFFICIENCY OF THE EVIDENCE

■ To support a theft conviction under IC 35–17–5–3(1)(a), (2)(a) (Burns Code Ed. 1975), the evidence must establish that the defendant knowingly obtained or exerted unauthorized control over property of the owner, with the intent to deprive the owner of the property's use or benefit.

■ The evidence establishes that Strode had the ability to control the stolen CB radio, notwithstanding his suggestion that he was not present in the car when the radio was discovered. The security officer testified that between the time he first observed the car and when he went over to investigate no one approached the vehicle. The trier of fact could reasonably infer therefrom that the stolen property must have been in the car at the time Strode drove into the parking lot. Since he was both driver and owner of the automobile, and had the car keys physically in his possession, he had the ability to control the property. *Cf., Hubble v. State,* (1973) 157 Ind.App. 684, 301 N.E.2d 396 (evidence that defendant was a passenger in an automobile in which two unconcealed adding machines were in the back seat does not establish control). The fact that the stolen CB radio might have been in the back while Strode was in the front seat is immaterial. *Cotton v. State,* (1965) 247 Ind. 56, 211 N.E.2d 158; *Gilley v. State,* (1949) 227 Ind. 701, 88 N.E.2d 759.

■ We agree with Strode, however, that the control thus established by the evidence does not permit application of the recent, exclusive possession rule. This rule provides, with respect to larceny, that the exclusive, unexplained possession of stolen property shortly after the time of the theft is a sufficient circumstance from which a jury is entitled to draw an inference of guilt.[3] *Vaughn v. State,* (1971) 255 Ind. 678, 266 N.E.2d 219.

2. The trial court instructed as follows:

   Alternate juror, you will retire with the jury, but unless, and until, we excuse a juror and you are directed to actively serve, you are not to vote or participate in the deliberations. You should, however, listen, so that, should you be called upon to serve, you will have the benefit of the preceding discussions.

   It is the sworn duty of all of you to promptly and immediately report to the court any violation of this instruction.

3. The rule does not apply to *receiving stolen property.* Mere possession of stolen goods shortly after a theft has occurred, by itself, is not sufficient circumstantial evidence to sustain a conviction for knowingly receiving or possessing stolen property. *Griffin v. State,* (1978) Ind.App., 372 N.E.2d 497. For criticism of this distinction, *see Gaddie v. State,* (2d Dist. 1980) Ind.App., 400 N.E.2d 788.

The rule as to larceny and its further application to burglary offenses has been criticized. *See* Justice DeBruler, dissenting, in *Vaughn v. State, supra,* 266 N.E.2d at 220 (theft), and in *Gann v. State,* (1971) 256 Ind. 429, 269 N.E.2d 381, 385–387 (second degree burglary).

To be distinguished from the sufficiency of the evidence question is the propriety of an instruction to the jury. *See Phillips v. State,* (1978) Ind.App., 377 N.E.2d 666; *Underwood v. State,* (1977) Ind.App., 367 N.E.2d 4, superceded in part by *Sansom v. State,* (1977) Ind., 366 N.E.2d 1171, which case was overruled on other grounds by *Elmore v. State,* (1978) Ind., 382 N.E.2d 893; *Abel v. State,* (1975) Ind.App., 333 N.E.2d 848. *Compare Sansom v. State, supra,* where three Justices, in *dicta,* stated that the instruction approved in *Gann* was proper. Justice Prentice and Justice DeBruler stated they would overrule the *Gann* instruction because it gives emphasis to particular evidence and invades the province of the jury.

▇ Although the facts at bar indicate that the stolen radio was discovered, at most, only four hours after the theft occurred and within close proximity to the scene of the crime, the evidence also discloses that there were three other occupants in Strode's car. Where, as here, recently stolen property is recovered from a place to which others present had equal access, such evidence *alone* is not sufficient to sustain a theft conviction. *See, Turbeville v. State*, (1873) 42 Ind. 490. *See generally*, Annot., 51 A.L.R.3d 727. There must be additional evidence to permit a reasonable inference that the defendant had *knowing* control and the intent to deprive.[4]

▇ The record before us does reveal other incriminating evidence in this regard. By his own testimony, Strode maintained that none of the items recovered from his car were there when he left to go to Shazams. In view of the security officer's testimony that a total of six CB radios were discovered, four of which were in plain view, and that they must have been in the car when Strode drove into the lot, the trier of fact could have easily rejected Strode's explanation. The jury could have concluded instead that such an incredulous story compelled the inference that Strode knew the CB was present and had the requisite intent—which, coupled with his control of the stolen CB radio within such close proximity to the time and place of the theft, further compelled a finding of guilt. The credibility of a defendant's explanation is evidence which the jury is entitled to weigh cumulatively with the other facts in determining guilt. *Vaughn v. State*, (1971) 255 Ind. 678, 266 N.E.2d 219; *Linnemeier v. State*, (1975) Ind.App., 330 N.E.2d 373. We, therefore, hold that the evidence is sufficient to sustain Strode's conviction.

Affirmed.

BUCHANAN, C. J., concurs.

SULLIVAN, J., concurs, with opinion.

SULLIVAN, Judge, concurring.

I agree with the majority determination which affirms the Theft conviction. I do not, however, agree that under the circumstances of the case before us, the "recent, exclusive possession rule", is inapplicable.

The "other incriminating evidence" which the majority utilizes to support the conviction, is nothing more or less than additional circumstantial evidence disclosing the control-"plus" necessary for implementation of the "recent, exclusive possession rule".

The elapsed time between the theft and apprehension was as little as one (1) hour and not more than four (4) hours. The distance between the site of the theft and the place of arrest was only two (2) miles. The stolen merchandise was observed in plain view in the automobile owned and driven by Strode. Under existing case law, these facts, coupled with the other circumstances, permit application of the guilt inference. *Vaughn v. State* (1971) 255 Ind. 678, 266 N.E.2d 219. *See also Gann v. State* (1971) 256 Ind. 429, 269 N.E.2d 381 (burglary).

If my assessment of the evidence is correct, or if it is even close, the conclusion seems to follow. This is not to say that the conclusion is logical, sensible, or just. It is only to say that it is indicated by case law in Indiana. *See Gaddie v. State* (2d Dist. 1980) Ind.App., 400 N.E.2d 788.

---

4. The State argues that Strode's conviction can be sustained under a joint exclusive possession theory, citing *Gilley v. State*, (1949) 227 Ind. 701, 88 N.E.2d 759. We disagree, for the reason that there is no evidence here of a confederacy. Although Strode and the other occupants of his car were together earlier in the evening, there is no evidence that they were

together between 8:00 and 9:30 P.M., during which time Fulkerson's radio might have been stolen. Nor is there any other evidence that they were acting in concert. *See, e. g., Taylor v. State*, (1972) 259 Ind. 25, 284 N.E.2d 775; *Bolton v. State*, (1970) 254 Ind. 648, 261 N.E.2d 841; *Lawrence v. State*, (1963) 244 Ind. 305, 192 N.E.2d 629.