**Karrie FOUT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 50A05–9207–CR–00236.

Court of Appeals of Indiana,
Fifth District.

Aug. 18, 1993.

Tom A. Black, Plymouth, for appellant-defendant.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

SHARPNACK, Chief Judge.

Karrie Fout appeals her conviction of the crime of neglect of a dependent, a class B felony. We reverse and need address only the following issue:

Was the evidence sufficient to support the verdict and judgment of the trial court?

This case arose out of the death of Karrie's less than one day old daughter Lela Rebecca. Lela died as a result of Group B Beta Hemolytic Streptococcus septicemia which she contracted while in utero. The infection followed the premature breaking of Karrie Fout's water some eleven days before Lela's birth.

While she was pregnant with Lela, Karrie and her husband decided that they wanted to deliver the baby in their home. They attended five sessions of a six session home delivery class taught by Roxanne Parker, a registered nurse. Before she admitted the Fouts into her class, Parker examined Karrie Fout and asked her to complete a medical questionnaire. On the basis of the examination and the medical questionnaire, Parker determined that Karrie's pregnancy was low risk and admitted the Fouts into the class.

On November 20, 1989, approximately five weeks before her due date, Karrie's water broke and she called Parker for advice. Parker told Karrie that she should seek medical attention from a doctor because the baby was not full term and the pregnancy was now high risk. Because Karrie had not consulted a doctor throughout the course of the pregnancy and apparently did not have a family doctor, Parker arranged for her to see a doctor of Parker's acquaintance named Cynthia Heckman–Davis.

Karrie did not go to see the doctor until November 25, five days after her water broke. The doctor examined Karrie and confirmed that her water had broken. In addition, the doctor determined that some amniotic fluid remained in Karrie's vaginal vault. Because of the danger that the remaining fluid could host a bacterial infection, the doctor took samples of the fluid in order to have them cultured for bacteria. Karrie was informed of the possibility that she had a bacterial infection in her reproductive tract.

Lela Fout was born on December 1. She would not breast feed after her birth, and, in the short period of time from her birth to her death, the only sustenance she could take was a very small amount of warm water. Approximately twenty-four hours after her birth, Richard Fout noticed that Lela had died. The Fouts did not seek medical attention for Lela at any time from her birth until her death.

On December 2, Richard Fout attempted to procure a casket from a local funeral home in order to bury Lela. The funeral home director informed the coroner, who instructed the funeral home director to have Richard Fout return to his home. The coroner then proceeded to the Fout residence. When the coroner arrived at the Fout home, Richard Fout told him that Lela's body was in the refrigerator. In the refrigerator, the coroner found the body in a plastic bag and the placenta in a stainless steel bowl. He removed both for forensic examination.

The pathologist conducted an examination of the placenta and found visual evidence suggesting a bacterial infection. He then conducted an autopsy on Lela's body. He discovered a subarachnoid hemorrhage and determined that the hemorrhage was caused by the bacterial infection. The pathologist determined that the bacterial infection caused Lela's death.

Karrie challenges the sufficiency of the evidence supporting the verdict and judgment of the trial court. When we review the evidence supporting a conviction, we may neither reweigh the evidence nor judge the credibility of the witnesses. *Washington v. State* (1982), Ind., 441 N.E.2d 1355, 1358. Where the evidence is in conflict, we are bound to view only that evidence which is most favorable to the verdict and judgment of the trial court. *Id.* If there is substantial evidence supporting the judgment, we must affirm. *Hutchinson v. State* (1985), Ind., 477 N.E.2d 850.

We have reviewed the record, and we find insufficient evidence to support the verdict and judgment. In order to meet its burden of proving neglect as charged in the information, the state had to introduce

evidence showing that Karrie: 1) had the care of a dependent (Lela); and 2) knowingly or intentionally; 3) placed Lela in a situation that endangered her life by failing to obtain proper medical care; 4) which failure resulted in serious bodily injury (Lela's death). (Record, p. 12); Ind. Code § 35–46–1–4. This court previously has held, "A person knowingly commits neglect of a child when [the person] is 'subjectively aware of a high probability that [the person] placed the dependent in a dangerous situation.'" *Hill v. State* (1989), Ind.App., 535 N.E.2d 153, 154 (quoting *Ware v. State* (1982), Ind.App., 441 N.E.2d 20, 23); *see also Fout v. State* (1991), Ind.App., 575 N.E.2d 340, 342.

The state's evidence showed that Karrie was Lela's mother making Lela Karrie's dependent. The state argues that it also presented evidence, in the form of the temperature chart, which gave rise to the reasonable inference that Karrie knew that Lela had a streptococcal infection. Other evidence showed that Karrie was aware before Lela was born that the pregnancy had become high risk because Lela was in the breech position and because of the premature breaking of Karrie's water. Additional evidence showed that Doctor Heckman–Davis had recommended that Karrie go to the hospital for a sonogram after her water broke, but that Karrie did not comply with these instructions.

Our further review of the record reveals a piece of evidence, a temperature chart offered as state's exhibit 6, which appears in two forms: one copy has been redacted and another has not. The entry for November 30 on the form which has not been redacted reads in part, "Day Dr. Davis called and I.D. the bacteria as strep." The second form, which was the one admitted into evidence at trial, is identical to the first except for the omission of the quoted language.[1] Nothing in the record clearly establishes that the jury was ever shown either form of exhibit 6, but, even if the jury had been shown a copy of the exhibit, it was the redacted copy. Absent the redacted portion of the temperature chart, there was no evidence on the record which showed that Doctor Heckman–Davis ever informed Karrie of the infection, and there is no evidence showing that Karrie was aware of the confirmed presence of the infection.[2]

The evidence did show that Lela exhibited some signs of not being well in the short twenty-four hours from her birth to her death, but there is no evidence that Karrie knew that these signs—primarily Lela's inability to breast feed or take any nourishment other than some warm water—indicated that Lela had a serious problem. Finally, the evidence showed that Lela died of the infection, and that there was a substantial chance that she would have survived if Karrie had obtained proper care for her. However, without some proof that Karrie subjectively knew of Lela's peril, the evidence was not sufficient to support the verdict and judgment.

We recognize that the third district found the evidence sufficient to support Richard Fout's conviction of neglect of a dependent based on Lela's death. *See Fout v. State* (1991), Ind.App., 575 N.E.2d 340. The different results in these two

---

1. The trial court excluded this information on the basis of the physician patient privilege despite Ind. Code § 31–6–11–8, which provides in part that the privilege is not a ground for "[e]xcluding evidence in any judicial proceeding resulting from a report of a child who may be a victim of child abuse or neglect, relating to the subject matter of such a report...." Decisions of our supreme court clearly indicate that this section is to be liberally construed to abrogate the privilege so that children may be protected from various forms of abuse. *See, e.g., Davidson v. State* (1990), Ind., 558 N.E.2d 1077, 1090–1091; *Baggett v. State* (1987), Ind., 514 N.E.2d 1244. We have not been presented with any issue concerning the propriety of the trial court's rulings excluding this evidence.

2. The trial court also prevented Dr. Heckman–Davis from testifying as to any communications which she had with Karrie concerning the presence of infection, again relying on the physician patient privilege. In addition, the trial court permitted the jury to see only a redacted form of the coroner's report (exhibit 1) from which was excluded a paragraph about Doctor Heckman–Davis' advice to Karrie that the fluid culture was positive for streptococcal infection and that she needed to seek medical treatment.

cases must be attributed to the apparently quite different records developed in the two cases. It is obvious from the opinion in Richard Fout's case that the court received evidence that Doctor Heckman–Davis informed the Fouts of the presence of the infection and of the danger that it posed to Lela. Judge Hoffman summarized the record in Richard Fout's case as follows:

> "Here, Richard's subjective knowledge may be inferred from not only the circumstances, but also from certain admissions made by Richard to the police. Richard and Karrie had been advised to seek medical treatment for the benefit of both Karrie and of the baby prior to Lela's birth. They were informed that a strep infection was discovered in the amniotic fluid, prompting the doctor to again recommend immediate hospitalization. Upon Lela's birth her weight was under five pounds. After consulting with the physician, Richard was specifically informed of two conditions which if present required immediate medical attention. Richard admitted that both conditions existed; yet, Richard persisted in his refusal to seek medical treatment for Lela. The circumstances, especially when coupled with Richard's admission that he knew Lela was in danger, amply support a finding that Richard knowingly or intentionally placed Lela in a situation that could endanger her life."

*Fout*, 575 N.E.2d at 342. Thus, the evidence of the element that is missing in this case, the defendant's subjective knowledge of the danger to which she was exposing her child, was present in her husband's case. The absence of this evidence here distinguishes Karrie Fout's conviction from that of her husband, and the absence of this evidence is the reason why her conviction may not stand while her husband's may.

We have found that Karrie Fout's conviction is not supported by sufficient evidence. We therefore reverse. Furthermore, because we have reversed the conviction due to insufficiency of the evidence, the double jeopardy clause of the federal constitution precludes the state from retrying this case, and the trial court must therefore enter judgment of acquittal on remand. *Smith v. State* (1979), 270 Ind. 479, 386 N.E.2d 1193.

**REVERSED.**

RUCKER and SULLIVAN, JJ., concur.