Sherrie **GERMAINE**, Appellant–
Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 52A02–9902–CR–129.

Court of Appeals of Indiana.

Oct. 25, 1999.

Transfer Denied Dec. 27, 1999.

---

Jeffrey G. Price, Peru, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary L. Borek, Deputy At-torney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Defendant Sherrie Germaine ("Mother") appeals her convictions after a jury trial of four counts of Neglect of a Dependent, class D felonies.[1] We affirm.

### Issues

Mother raises two issues which we restate as:

I. Whether the trial court erred by overruling her objection to the introduction into evidence of a videotape and photographs taken of the inside of Mother's house under the authority of an ex parte order entered in collateral Child in Need of Services ("CHINS") proceedings.

II. Whether the evidence is sufficient to support Mother's convictions.

### Facts

The evidence in the light most favorable to the verdict reveals a caseworker ("Caseworker") from the Miami County Department of Family and Children ("DFC") went to Mother's home where she lived with her husband ("Father") and their four children. (R. 235, 268, 307). At the home, Caseworker spoke with Father who permitted her to have a look inside the home and to take a photograph. (R. 308). The photograph showed that the door was almost completely blocked by two mattresses and a pile of garbage. (R. 310). Caseworker took one step inside the home, but was repelled by foul odors, became sick, and vomited. (R. 311). Caseworker requested the DFC attorney to obtain a court order permitting DFC representatives access to the home to inspect it. (R. 311–12).

The Judge of the Juvenile Court issued an order which read in pertinent part as follows:

---

1. IND.CODE § 35–46–1–4(a)(1).

STATE OF INDIANA
IN THE MIAMI JUVENILE COURT

SS:

COUNTY OF MIAMI
CALENDAR TERM, 1997
IN THE MATTER OF
[the four children, each with a corresponding cause number]
Children alleged to be children in need of services ·

*EXPARTE ORDER FOR DFC TO TAKE PHOTOGRAPHS*
*OF THE CONDITION OF THE FAMILY RESIDENCE AND*
*INSPECTION OF THE PREMISES*

Comes now the **Miami County Office of the Division of Family and Children**, hereinafter referred to as the "DFC" by its attorney, **Robert A. Spahr**, and its Family Casemanager, **[Caseworker]**, for its Exparte Order for DFC to take Photographs of the Condition of the Family Residence and Inspection of the Premises by the DFC and a Miami County Law Enforcement Officer, and respectfully shows the Court as follows:

1. The DFC believes that living conditions in the family residence located at [Mother's address], are to the point that they do not meet the minimum sufficient level of care which the custodial parent has a duty to provide for the physical and mental health of the children then occupying the residence.

2. It is in the best interests of the minor children, [the names of the four children], that this Court authorize by means of this Exparte Order to **immediately, and without notice, at 2:30 p.m. on August 27, 1997, proceed to [Mother's] household located at [Mother's address], for the purpose of photographing the interior as well as the exterior thereof**, in an effort to substantiate of record the present living conditions at that location. Additionally, a Miami County Law Enforcement Officer shall accompany the DFC Family Casemanager, [Caseworker], to [Mother's] residence to determine whether the living conditions therein represent a violation of the living standards with regard to a residential structure and to identify any hazards posed by the living conditions therein.

**3. The Miami County Sheriff shall forthwith serve a copy of this Order to the parents of [Mother's] children, at their residence located at [Mother's address].**

ALL OF WHICH IS FINALLY ORDERED, on this August 27, 1997.

(bold original).

A police officer and two DFC representatives ("the investigators") went to Mother's house to execute the order/warrant. (R. 204–10). Father allowed the investigators into the home. (R. 210). The investigators wore rubber gloves and masks and placed "Vicks Vapo Rub" on the masks and in their noses to cover the foul odors. (R. 210, 219, 230). The investigators photographed the area with a camera and a videotape recorder. (R. 211). The floor of the house was covered with garbage, decayed food, and· other debris. (R. 210, 229–30, 250). It was difficult to walk around the house because of all the debris; the investigators sank into the garbage with every step. (R. 221, 230). There was a path of compacted garbage about two feet high which was used to access the children's bedrooms. (R. 232, 246). There were heaps and heaps of garbage, some of it as high as an investigator's shoulder. (R. 230–31). Not all of the rooms were accessible. (R. 271). The house was infested with flies, roaches, and other insects. (R. 210, 233, 278).

There was an electric fan on top of the garbage which an investigator recognized as a fire hazard. (R. 230). The gas water heater, and gas furnace employed pilot lights. (R. 347). Although the house had three doors to the outside, only one was

accessible because the others were blocked by trash and debris. (R. 219). The blocked doorways also represented a fire hazard. (R. 230). There were no smoke alarms. (R. 347).

Based on the investigation, the DFC requested an emergency order in the CHINS proceedings to remove the children from the home. (R. 233–35, 353). Caseworker testified on cross-examination that the purpose for going to Mother's home in the first place was to safeguard the children. (R. 353). The children were adjudicated as CHINS based in part upon the parents' admissions. (R. 236). Pursuant to a court order, and in conjunction with the CHINS proceedings, caseworkers from the DFC and others cleaned out the home and introduced a homemaker into the home to provide assistance. (R. 338–39, 367). Caseworker and the Court Appointed Special Advocate ("CASA") both testified that the goal of the DFC is to continue to work toward reunification of the family. (R. 354.374–75).

Father pled guilty to child neglect and testified against Mother at trial. (R. 282, 294–96). Father admitted that the house was a fire hazard. (R. 275). Father testified that if there were a fire, the children would have had to exit through the upstairs windows because the clutter blocked the doors to the outside. (R. 280). Father testified that the house was full of flies and that there were hundreds of cockroaches. (R. 279). Father testified that the children had occasionally been sent home from school because of lice. (R. 287).

A physician who was a member of the "Child Protective Team" testified that the home posed a health risk to its inhabitants.[2] (R. 327). The physician testified that rotting food, flies, cockroaches, and

rodents could breed diseases. (R. 328). The physician stated that cockroach feces had been identified as a major contributor to respiratory illnesses, especially asthma. (R. 329).

The videotape and the photographs taken by the investigators pursuant to the Juvenile Court's order/warrant were shown to the jury. (R. 217–18, 309–24).

Mother was found guilty of four counts of Child Neglect, one count for each of her children. (R. 12–15, 96–97). Mother received a suspended sentence and was placed on probation. (R. 6, 430–31). This appeal ensued.

### Discussion and Decision

#### I. Admissibility of Videotape and Photographs of the Inside of Mother's House

##### A. Mother's Contentions

Mother asserts the videotape and photographs should have been suppressed as products of a warrantless search. Mother contends that, "to the extent the search ... could be construed as an administrative search, the warrant requirement still obtains." (Appellant's brief at 9). Mother argues the ex parte order entered by the juvenile court in the CHINS proceedings was not valid as a search warrant.[3]

##### B. Searches Pursuant to an Administrative Warrant—a Lesser Standard of Probable Cause than required in Traditional Criminal Investigations

A search of a private house is presumptively unreasonable if conducted without a warrant. *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 308, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) (citing two cases decided the same day, *Camara v. Municipal Court,* 387 U.S. 523, 528–29, 87 S.Ct. 1727,

---

2. The establishment of a "Community Child Protection Team" is authorized under IND. CODE § 31–33–3–1. *See Deasy–Leas v. Leas,* 693 N.E.2d 90, 97 (Ind.Ct.App.1998), *trans. denied.*

3. In her brief, Mother has supported her argument with traditional Fourth Amendment analysis. Although she makes a passing refer-

ence to the Indiana Constitution, she has not set forth separate argument or authority that the search was violative of Article I, § 11 of the Indiana Constitution. Thus, Mother has waived any argument that she is entitled to relief on state constitutional grounds. *See Fair v. State,* 627 N.E.2d 427, 430 n. 1 (Ind. 1993).

18 L.Ed.2d 930 (1967), and *See v. City of Seattle*, 387 U.S. 541, 543, 87 S.Ct. 1741, 18 L.Ed.2d 930 (1967)). As the purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials, a warrant is required during civil as well as criminal investigations unless some recognized exception to the warrant requirement applies. *Id.*

■ The determination of when the right to privacy must reasonably yield to the right to search is to be decided by a judicial officer, not by a policeman or government enforcement agent. *Camara*, 387 U.S. at 529–32, 87 S.Ct. 1727. If a valid public interest justifies the intrusion contemplated, then there is sufficient probable cause to issue a suitably restricted search warrant. *Id.* at 539, 87 S.Ct. 1727.

■ Probable cause to issue an administrative warrant exists if reasonable legislative, administrative, or judicially prescribed standards for conducting an inspection are satisfied with respect to a particular dwelling. *Michigan v. Clifford*, 464 U.S. 287, 295 n. 6, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984). However, if the primary object of the search is to gather evidence of criminal activity, a criminal search warrant must be obtained and only upon a showing of probable cause to believe that relevant evidence will be found in the place to be searched. *Id.* at 295, 104 S.Ct. 641. If evidence of criminal activity is discovered during the course of a valid administrative search, it may be seized under the plain view doctrine. *Id.* However, governmental officials may not use this evidence to expand the scope of the administrative search to uncover and seize evidence of criminal activity without first making a successful, traditional showing of probable cause to an independent judicial officer. *Id.* at 295–96, 104 S.Ct. 641.

### C. Statutory Duties Regarding the Investigation of Reports of Child Abuse or Neglect

In Indiana, the local child protection service shall initiate an immediate and appropriately thorough child protection investigation of every report of suspected child abuse or neglect. IND.CODE § 31–33–8–1. The local child protection services are required by statute to seek and receive the cooperation of the police and the courts. IND.CODE § 31–33–2–6. The local child protection service must notify the police upon receipt of reports of child abuse. IND.CODE § 31–33–8–2. When the law enforcement agency has reason to believe that a report evidences an offense of child abuse or neglect, the law enforcement agency, along with the local child protection service, must conduct an immediate, onsite investigation of the report. *Id.;* IND.CODE § 31–33–7–7. The law enforcement agency's investigation of child abuse or neglect *must proceed in the same manner as any other criminal investigation.* IND.CODE § 31–33–8–2. If a law enforcement agency participates in the child abuse or neglect investigation, it shall forward all information to the local prosecuting attorney. IND.CODE § 31–33–8–10.

### D. Analysis—Requirement of Criminal Search Warrant

■ As set out above, the statutory scheme designed to protect Indiana's children links the CHINS investigation conducted by the local child protective service inextricably with the criminal investigation conducted by the local law enforcement and prosecution agencies. The police, who must accompany the child protective service representative on an investigation, are required by statute to conduct the investigation in the same manner as any other criminal investigation. *See* IND.CODE § 31–33–8–2. Therefore, we hold that, regardless of whether the primary objective of a particular administrative warrant issued in conjunction with Indiana CHINS proceedings is civil or criminal in nature, the search of a private residence may be conducted only pursuant to a criminal search warrant issued by a neutral magis-

trate and supported by the traditional standard of probable cause applicable to criminal investigations.

### E. Requirements of a Criminal Search Warrant

As stated in *Newby v. State*, 701 N.E.2d 593, 597–98 (Ind.Ct.App.1998):

> In determining whether to issue a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.' When reviewing a magistrate's decision to issue a warrant, the reviewing court applies a deferential standard. We will affirm the magistrate's decision to issue the warrant if the magistrate had a 'substantial basis' for concluding that probable cause to search existed. 'Substantial basis' requires us to focus on whether the reasonable inferences drawn from the totality of the evidence support the probable cause determination.

The circumstances alleged to support a warrant need only have led a person of reasonable caution to believe that a crime has been committed. *Cutter v. State*, 646 N.E.2d 704, 713 (Ind.Ct.App.1995). Due deference is accorded to a magistrate's determination that probable cause existed sufficient to issue a warrant. *Id.* The decision to issue a warrant may be based, not only upon the facts stated by the affiant, but also the reasonable and rational inferences which may be drawn therefrom. *Id.* at 714.

### F. Analysis—Whether the Juvenile Court's Order Meets the Requirements of a Criminal Search Warrant

We hold that the order entered by the Juvenile court meets these specifications and thus qualifies as a valid criminal search warrant. Although the present record of the criminal proceedings does not reveal the precise method of how the application for the order from the Juvenile court was made, the record in the present case nevertheless reveals that the order/warrant was issued by the judge of the Juvenile Court and was supported by probable cause sufficient to support a criminal search warrant.[4] As set out

---

4. In her reply brief, Mother argues that the order/warrant was defective because it *may* not have been supported by an affidavit as required by IND.CODE § 35–33–5–2(a). *See Holtel v. State*, 155 Ind.App. 1, 290 N.E.2d 775, 779 (1972) (holding that a search warrant is invalid if not based on an affidavit). Even if it were established that no affidavit had been filed in support of the order/warrant, suppression of the videotape and photographs would be unwarranted here because of the application of the good faith exception to the exclusionary rule as established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See Figert v. State*, 686 N.E.2d 827, 831 (Ind.1997). *Holtel*, 155 Ind.App. 1, 290 N.E.2d 775, 779, predates the 1984 inauguration of the *Leon* good faith exception to the exclusionary rule by more than a decade.

As the objective of the exclusionary rule is to deter police misconduct, the Fourth Amendment does not require the suppression of evidence seized pursuant to a warrant which is later found to be defective where the police officers relied in objective good faith on the validity of the warrant. *Figert*, 686 N.E.2d at 831. However, the good faith exception will not apply where the basis supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Id.* Additionally, the good faith exception will ordinarily not apply where the same police officers who provide and present the misleading information in obtaining a warrant actively participate in the subsequent search. *See Newby*, 701 N.E.2d at 603.

In the present case, however, the record does not support any inference of misconduct or misinformation on the part of the DFC or police in obtaining the order/warrant to search Mother's home. As discussed above, Caseworker had gone to Mother's house, looked inside, and had taken a photograph depicting the squalor within, before contacting the DFC's attorney to make the application for the order/warrant. Therefore, the record is clear that the application for the order/warrant was amply supported by probable cause. Additionally, the police officer who conducted the search had not been involved in the application for the order/warrant. Accordingly, to the extent that the pres-

above, Caseworker had gone to Mother's house and obtained Father's consent to look inside and take a photograph which depicted the squalor within. Under the totality of the circumstances, the juvenile court judge had a substantial basis for concluding that probable cause to search Mother's house for evidence of criminal child neglect existed. Therefore, we conclude that the videotape and the photographs obtained pursuant to the juvenile court's order were properly admissible in the criminal proceedings against Mother.

## II. Sufficiency of Evidence

### A. Mother's Contention

 Mother correctly points out that in the present prosecution for the knowing or intentional neglect of her dependents, the State was required to prove beyond a reasonable doubt that Mother was subjectively aware of a high probability that she had placed her dependents in a dangerous situation. *See Fout v. State*, 619 N.E.2d 311, 313 (Ind.Ct.App.1993) (citing *Hill v. State*, 535 N.E.2d 153, 154 (Ind.Ct.App. 1989) and *Ware v. State*, 441 N.E.2d 20, 23 (Ind.Ct.App.1982)). Mother contends that the evidence fails to demonstrate beyond a reasonable doubt (1) that she *knowingly* neglected her dependents, and (2) that she *endangered* the children. Mother points out that none of the children had been present in the house when the State's witnesses were there.

### B. Standard of Review—Sufficiency of Evidence

 The standard for reviewing the sufficiency of evidence is well-settled. We neither weigh the evidence nor judge witness credibility. *Roach v. State*, 695 N.E.2d 934, 941 (Ind.1998). Rather, we examine only the evidence most favorable to the State, along with all reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value from which the trier of fact could

find guilt beyond a reasonable doubt, then we will affirm. *Id.* Intent is a mental state, and absent an admission, the jury must resort to the reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences that might be expected from that conduct, there exists a showing or inference of the required criminal intent. *Gibson v. State*, 622 N.E.2d 1050, 1053 (Ind.Ct.App.1993), *pertinent portion adopted*, 643 N.E.2d 885, 892. The jury may draw reasonable inferences from both direct and circumstantial evidence, and a guilty verdict may be based on circumstantial evidence alone. *Jones v. State*, 523 N.E.2d 750, 752 (Ind.1988). It is well-established that the trier of fact can infer the defendant's knowledge from circumstantial evidence. *Klopfenstein v. State*, 439 N.E.2d 1181, 1185 (Ind.Ct.App. 1982).

### C. Analysis

 Mother's argument is merely an invitation to reweigh evidence. Although the children were not present when the State's witnesses investigated Mother's house, sufficient evidence was presented from which the jury could reasonably infer that the children had been living there with Mother and Father at that time. For example, as noted in the FACTS section, there was testimony regarding the condition of the children's bedrooms. Moreover, the jury could reasonably draw the inference that the house, which was filled with rotting garbage, flies, and cockroaches, exposed the children to the dangers posed by disease and fire. Finally, the jury could reasonably conclude that the conditions were such that Mother was subjectively aware of a high probability that she had subjected her children to the dangerous situation posed by the condition of their home environment. Therefore, the

---

ent order/warrant *may* have suffered from the technical defect that no affidavit had been prepared to support its issuance, the good

faith exception to the exclusionary rule operates to obviate the need to suppress the videotape and photographs.

evidence is sufficient to support Mother's convictions and we find no error.

Affirmed.

GARRARD, J., and SULLIVAN, J., concur.