**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 23 2014, 7:12 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARIELENA DUERRING**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DAVID JASTRZEMBSKI,            )
                              )
    Appellant-Defendant,       )
                              )
       vs.                     )     No. 71A03-1312-CR-481
                              )
STATE OF INDIANA,             )
                              )
    Appellee-Plaintiff.        )

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Elizabeth C. Hurley, Judge
Cause No71D08-1211-FD-1031

**July 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Senior Judge**

STATEMENT OF THE CASE

David Jastrzembski appeals from his conviction of one count of check fraud[1] as a Class D felony, contending that there was insufficient evidence to support his conviction. Consistent with our standard of review, however, we affirm Jastrzembski's conviction.

FACTS AND PROCEDURAL HISTORY

Juan Velasquez, an immigrant from Mexico who had been in the United States for approximately ten years at the time relevant to this appeal, owns a landscaping and small construction business in St. Joseph County. Velasquez often visited pawn shops in order to purchase good tools for his businesses. One day while at a pawn shop, Velasquez met David Jastrzembski and the two began discussing landscaping and construction. Jastrzembski, who sought subcontractors for his roofing business, AceHomedoctors, provided a business card to Velasquez and told him that he was involved in the roofing business. The two developed a relationship sufficient enough for Velasquez to rent one of his business trucks to Jastrzembski and to loan him money for his sick child.

Anthony Adamo owned several rental properties in St. Joseph County and hired Jastrzembski to replace a roof on a rental property he owned on 4138 Bonfield Place in South Bend in June or July of 2012. Jastrzembski then contacted Velasquez with the offer to replace the roof on Adamo's rental property. Jastrzembski and Velasquez entered into a contract with Velasquez and his workers for labor to remove the old roof and replace it

---

[1] Ind. Code § 35-43-5-12 (1998).

2

with a new one. According to the terms of the contract, Jastrzembski was to supply the materials for the job.

When Velasquez and the four members of his work crew arrived at the work site on July 19, 2012, the only materials they found there were shingles. Velasquez called Jastrzembski to inquire about the other materials that were needed for the job, such as nails and insulation. Jastrzembski replied, "[O]kay, can you buy it [?]" Tr. p. 23. Even though the contract provided otherwise, Velasquez went ahead and purchased the materials because there was a deadline for the completion of the job.

When the job was completed, Adamo paid Jastrzembski with a check. Apparently, Adamo's check was honored by Adamo's bank. Although Adamo did not actually see Jastrzembski cash the check, he saw him walk into what he believed was a Wells Fargo Bank branch. Jastrzembski later met with Velasquez on July 24, 2012 at a Walgreens Pharmacy and gave him a check for $2,479.16, written on an account in Jastrzembski's name with Wells Fargo Bank, check number 4056. Velasquez deposited the check in his bank account with Notre Dame Federal Credit Union.

Several days later, Velasquez was attempting to purchase material at a Lowe's Home Improvement Store when his credit card was declined. Velasquez contacted the branch manager at his bank and was informed that Jastrzembski's check was not good. A legal copy of the check had been returned with the stamp "CLOSED ACCOUNT." State's Ex. 2.

Velasquez eventually located Jastrzembski and asked him about the dishonored check. According to Velasquez, Jastrzembski started "to give me a lot of excuses. I'm

going [to] pay tomorrow." Tr. p. 28. At some point, Jastrzembski provided Velasquez a money order for either $1,000 or $1,500 to cover what he was owed for the borrowed truck or the borrowed money. Jastrzembski never paid Velasquez for the work on the Adamo work site.

Robin Morgan, the branch manager at Wells Fargo Bank, testified that the check Jastrzembski delivered to Velasquez was a Wells Fargo check, and was not a starter check issued by the bank based upon unique markings starter checks have and the high number of the check. Morgan searched the bank's database to find a record of accounts bearing the account number on the check and could find none. She testified that she was able to locate two accounts opened in Jastrzembski's name that were subsequently closed. Neither of those account numbers matched the account number on the check issued to Velasquez. In addition, Morgan testified that if she is unable to locate an account, one explanation is that there has been no activity on the account for more than three years. Once that occurs, the computerized record of that account is purged from the bank's system.

On November 26, 2012, the State charged Jastrzembski with one count of check fraud as a Class D felony. At the conclusion of his jury trial, Jastrzembski was found guilty as charged. The trial court sentenced him to a term of two years in the Department of Correction with Class 1 credit for six days served prior to sentencing. Jastrzembski now appeals, claiming that the evidence is insufficient to sustain his conviction for check fraud.

## DISCUSSION AND DECISION

Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. We will consider only

4

the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. A conviction may be based upon circumstantial evidence alone. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense.

*Lainhart v. State*, 916 N.E.2d 924, 939 (Ind. Ct. App. 2009) (internal citations omitted).

In order to establish that Jastrzembski had committed check fraud, the State was required to prove beyond a reasonable doubt that Jastrzembski knowingly or intentionally obtained property, i.e., materials and services, through a scheme or artifice, with intent to defraud by issuing or delivering a check, knowing that the check will not be paid or honored by the financial institution upon presentment in the usual course of business. Ind. Code § 35-43-5-12 (1998). In particular, he challenges the State's evidence of his intent to defraud, contending that the facts instead reflect that this was a dispute between contractors.

> Intent is a mental state, and absent an admission, the jury must resort to the reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences that might be expected from that conduct, there exists a showing or inference of the required criminal intent. The jury may draw reasonable inferences from both direct and circumstantial evidence, and a guilty verdict may be based on circumstantial evidence alone. It is well-established that the trier of fact can infer the defendant's knowledge from circumstantial evidence.

*Germaine v. State*, 718 N.E.2d 1125, 1132 (Ind. Ct. App. 1999) (internal citations omitted). Further, "intent to defraud may be proven by circumstantial evidence . . . and will often include the general conduct of the defendant when presenting the instrument for acceptance." *Williams v. State*, 892 N.E.2d 666, 671 (Ind. Ct. App. 2008) (quoting

5

*McHenry v. State*, 820 N.E.2d 124, 127 (Ind. 2005) and *Wendling v. State*, 465 N.E.2d 169, 170 (Ind. 1984)).

The evidence most favorable to the jury's verdict reveals that Jastrzembski provided Velasquez a check for $2,479.16 on a Wells Fargo account in exchange for Velasquez providing materials and labor for the replacement of the roof on Adamo's rental property. The check was from a closed account that did not exist, as nothing in the computer system registered for that account number at Wells Fargo. Jastrzembski had two other accounts with Wells Fargo and those accounts were also closed. This evidence is sufficient to support the inference that when Jastrzembski delivered the check to Velasquez, he knew that the check, written on a closed account, would not be honored by Wells Fargo upon presentment.

Additionally, when Velasquez confronted Jastrzembski about the dishonored check, Jastrzembski's reaction was not one of surprise that the check was dishonored. Instead, Jastrzembski provided excuses for the bad check and stated repeatedly that he would pay Velasquez. At the time of the trial, however, Jastrzembski had not paid Velasquez for the materials and labor provided by Velasquez.

On appeal, Jastrzembski focusses on evidence that he provided a money order for either $1,000 or $1,500 to Velasquez after writing the bad check. Velasquez testified, however, that the money was not payment for the roofing work and materials, but was payment for the truck rental and money loaned for Jastrzembski's sick child. "The jury was free to choose which witnesses to believe and disbelieve." *Bennett v. State*, 883 N.E.2d

6

888, 893 (Ind. Ct. App. 2008). Here, the jury chose to believe Velasquez's testimony and was within its province to do so.

Jastrzembski also asserts that the conduct involved suggests a dispute between two businessmen over incomplete work, rather than a crime. However, Jastrzembski wrote a bad check on a closed account and gave it to Velasquez. While Adamo testified that initially the gutters had not been repaired at the rental property, he also testified that he did not have any problems with the work. Velasquez explained that his crew damaged a portion of the gutter while repairing the roof, but that they later replaced the damaged section of gutter. The jury was free to believe or disbelieve the testimony presented and chose to believe that Jastrzembski's conduct constituted a criminal offense. The evidence is sufficient to support the jury's verdict finding Jastrzembski guilty of obtaining Velasquez's services and materials through a scheme with the intent to defraud by delivering a check he knew would not be paid or honored by Wells Fargo upon presentment in the usual course of business.

## CONCLUSION

For the foregoing reasons, we affirm the trial court.

Affirmed.

NAJAM, J., and PYLE, J., concur.

7